CHRISTOPHER CHIOU
Acting United States Attorney
Nevada Bar. No. 14853
BIANCA R. PUCCI
Assistant United States Attorney
District of Nevada
501 Las Vegas Blvd. South, Suite 1100
Las Vegas, Nevada 89101
(702) 388-6336
Bianca.Pucci@usdoj.gov
*Attorneys for United States of America*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 2:18-cr-302-JAD-NJK |
| Plaintiff, | |
| vs. | **Government's Sentencing Memorandum** |
| RICHARD FRED DITTMER, III, | |
| Defendant. | |

**CERTIFICATION: The undersigned counsel certifies that this memorandum is timely filed**.

### I.    Introduction

In 2014, child pornography was being shared over a peer-to-peer network from the residence the defendant, Richard Fred Dittmer III, shared with his father. Investigators executed a search warrant on the residence but, primarily due to Dittmer III wiping his cell phone during the search warrant, did not have sufficient evidence to charge Dittmer III with any offenses at that time. In 2016, a second investigation into the Dittmer residence revealed that Dittmer III distributed and received child pornography over the BitTorrent network. Investigators executed a second search warrant at Dittmer III's residence, seized

multiple devices, and spoke with Dittmer III who admitted to downloading and uploading child pornography in 2016 and possessing child pornography in 2014. Prior to Dittmer III being charged in federal court for the offenses arising out of the 2016 investigation, but after the execution of the search warrants, Dittmer III committed lewd and lascivious acts upon a seven-year-old relative.[1] In 2018, Dittmer III was charged with offenses arising out of the 2016 investigation. Dittmer III was released from custody on pretrial supervision.

While on pretrial release, Dittmer III manipulated a 13-year-old girl into taking pictures of her nude breasts and buttocks for his own depraved sexual desires. That was not enough for Dittmer III. He then used those photos in an attempt to extort the child into producing additional child sexual abuse images and sought to sexually assault her. He took screenshots of the victim's location informing her he knew where she lived and that he knew what school she attended. He threatened to send the nude images to her whole school if she did not comply with his sexual demands.

Additionally, while on pretrial release, Dittmer III also attempted to sexually exploit other minor girls, continued to trade child pornography, manufactured firearms, and attempted to sell those firearms over Snapchat. Even after Dittmer III was held in custody for violating his terms of pretrial release, he did not stop creating his own weapons. Detention center employees recovered multiple makeshift weapons in Dittmer III's possession while he has been in custody.

It is clear that Dittmer III's conduct has become increasingly severe and brazen over the years, regardless of supervision or even incarceration. Dittmer III's actions prescribe a sentence of 324 months. A 324-month sentence is sufficient but not greater than necessary

---

[1] The government learned of this conduct after Dittmer III's plea in preparation for sentencing.

to further the goals of sentencing. The government further requests a lifetime term of supervised release to follow his incarceration, with all conditions recommended in the Presentence Investigation Report to be imposed.

## II.    Factual Background[2]

In August of 2014, Homeland Security Investigations (HSI) Las Vegas initiated an online peer-to-peer (P2P) investigation into the distribution of child pornography from an IP address registered to the Dittmer residence in Las Vegas.[3] Dittmer III and his father (Richard Fred Dittmer II) both resided at the address. In September of 2014, a search warrant was executed on the Dittmer residence.[4] Investigators recovered a cell phone from the area in which Dittmer III was observed exiting during the execution of the search warrant.[5] Dittmer III admitted that he purposely "wiped" all of the content from the phone prior to the investigators' entry into the home and claimed it was because he had nude photos of his 16-year-old girlfriend on the phone.[6] The phone was not seized due to difficulty in recovering any data from it given Dittmer III's evasive conduct.[7] Although child pornography was found on other devices located in the house during the 2014 search, Dittmer III was not charged with any offenses arising out of that investigation at that time. Dittmer III later confessed that the phone he possessed did contain child pornography.[8]

In June of 2016, Dittmer III utilized the BitTorrent file sharing network to download child pornography files. While Dittmer III utilized this file sharing network, a

---

[2] *See* ECF No. 84 at 13-15. The facts are supplemented by the PSR.
[3] PSR at ¶ 12.
[4] *Id.* at ¶14.
[5] *Id.*
[6] *Id.* Dittmer III was 18 years old at the time.
[7] *Id.*
[8] *Id.* at 30.

1  Las Vegas Metropolitan Police Department (LVMPD) detective with the Internet Crimes

2  Against Children (ICAC) Task Force downloaded 100 image files and 6 video files of

3  child pornography from Dittmer III's device located at his residence in Las Vegas.

4      During the investigation into Dittmer III's distribution of child pornography over

5  BitTorrent, LVMPD also received a CyberTip that also resolved back to Dittmer III's Las

6  Vegas residence from Google, Inc. (hereinafter "Google") regarding possible

7  transmission of child pornography. Google user 2rfd1996@gmail.com, later identified as

8  Dittmer III, uploaded 10 files of child pornography to the YouTube platform, owned and

9  operated by Google.

10     In November of 2016, a second search warrant on Dittmer III's residence was

11  executed and Dittmer III was seen attempting to exit through an upstairs window.

12  Investigators located Dittmer III in the residence, and he was advised of his *Miranda*

13  rights. Dittmer III admitted that he lived at the residence and his email was

14  2rfd1996@gmail.com. Dittmer III admitted to uploading numerous videos containing

15  child pornography to YouTube, and that he had BitTorrent on his cell phone. He

16  admitted he received images and videos of child pornography by using the BitTorrent file

17  sharing program. Dittmer III stated that investigators would find numerous images and

18  videos of child pornography on his cell phone that he downloaded. As mentioned above,

19  Dittmer III also admitted that he possessed a cell phone in 2014 that had child

20  pornography on it.

21     Investigators seized Dittmer III's cell phone, including its SIM card. Over 365

22  images and 18 videos of child pornography were found saved on Dittmer III's cell phone,

23  including prepubescent files and sadistic and masochistic files. The following is a

24  description of one of the files located on Dittmer III's cell phone:

4

**File Name:**  1477288654239
**SHA1:**  FD3ANSZA4MLAIRK3PXBCVQ6WL3EGYZRU
**Description:**  This image depicts a close-up of a nude pre-pubescent female toddler, approximately 4 to 6 years of age, with her legs spread apart and exposing her bare vagina. An adult male's erect penis is seen penetrating the toddlers' anus. The female child has a lack of fatty deposits and pubic hair.

On September 26, 2018, Dittmer III was charged with *Receipt* and *Possession of Child Pornography* arising out of the 2016 investigation. He was released from custody on pretrial supervision.

Between December of 2018 and February of 2019, while on pretrial supervision and in violation of its terms, Dittmer III contacted a 13-year-old girl,[9] Victim 1, through the Snapchat cell phone application. Dittmer III sent Victim 1 a picture of his naked penis while he was in the shower. Dittmer III, utilizing the name "Ricky Vegas," sent Victim 1 money through the Cash App application. Dittmer III then demanded nude photographs from Victim 1 because he sent her money. Victim 1 attempted to send the money back but was unable to bypass the security requirements. Victim 1 initially sent Dittmer III images of nude females she found on the internet to placate him. But Dittmer III indicated he knew the images were not of Victim 1 and he demanded nude images of Victim 1. Dittmer III threatened Victim 1 by sending her a screenshot of a map showing her residence at that time:[10]

---

[9] Due to typographical error, the plea agreement incorrectly states that the victim was 14 years old.
[10] Victim 1 has since moved.



Victim 1 then sent images of her nude breasts and buttocks to Dittmer III. Dittmer III then directed VICTIM 1 on what additional images and videos to produce:

Dittmer III informed Victim 1 she must send him nude images whenever he asked. Dittmer III then offered Victim 1 $1,000 to perform fellatio on him.

Victim 1 told Dittmer III that she did not want to send any more photos. Dittmer III did not care he was traumatizing Victim 1. Instead, he demanded more child pornography images and videos, and threatened to expose Victim 1 at her school:

6



/// 

///

Dittmer III also threatened Victim 1 to not tell anyone about him, or else he would send her nude videos to others and when Victim 1 begged Dittmer III to stop contacting her, he refused and instead repeated his demand for more nude videos:

Dittmer III even sent Victim 1's nude images back to her with annotations and her name on them, suggesting those were the images he would distribute to others if she did not send more. Terrified, Victim 1 finally reported Dittmer III's messages to her family, who in turn reported the matter to police.

Dittmer III was arrested for violations of pretrial release and investigators obtained his new cell phone, including its micro SD card, during a search incident to his arrest. Upon forensic examination, investigators learned Dittmer III's micro SD card contained additional child pornography files.

Investigators also obtained a search warrant for Dittmer III's Snapchat account. Dittmer III's Snapchat records revealed that Victim 1 was not the only underage female Dittmer III had attempted to sexually exploit. Instead, Dittmer III's Snapchat account demonstrated a pattern whereby he contacted numerous females on the social media application, asking to buy nude photographs of them. Even when he would learn that the females were underage, Dittmer III showed no hesitation and instead continued to try

and negotiate a price for child pornography images. Dittmer III also used Snapchat to

trade available child pornography with other Snapchat users.

In addition to the sex crimes he was committing against children, Dittmer III was

also making his own so-called "ghost guns" and attempting to sell them over Snapchat

under his handle "rickbross":

| | | |
|---|---|---|
| rickbrosss | aleksei_gamez14 | |
| rickbrosss | aleksei_gamez14 | Ery gun i make handgun or rifle takes drums too |
| rickbrosss | aleksei_gamez14 | |
| aleksei_gamez14 | rickbrosss | Buy* |
| aleksei_gamez14 | rickbrosss | Send me that vid again with all the guns ima send that to my homies |
| aleksei_gamez14 | rickbrosss | Hmm you said 1%2C000 for the white one? |
| rickbrosss | aleksei_gamez14 | Unless you want a fully custom glock then thats 2000 |
| rickbrosss | aleksei_gamez14 | Just for the frame the slide is black |
| rickbrosss | aleksei_gamez14 | Black%2C white%2C grey%2C tan%2C dark green |
| rickbrosss | aleksei_gamez14 | I can do different colors too |
| rickbrosss | aleksei_gamez14 | Thats what that white one is |
| aleksei_gamez14 | rickbrosss | You got a g 19 |
| aleksei_gamez14 | rickbrosss | That's true |
| rickbrosss | aleksei_gamez14 | Anyone can buy mags and bullets online |
| aleksei_gamez14 | rickbrosss | Oh that's tight |
| rickbrosss | aleksei_gamez14 | And no i dont sell mags or bullets just the guns |
| rickbrosss | aleksei_gamez14 | And buy new barrel and firing pin its a new gun |
| rickbrosss | aleksei_gamez14 | Cos thats how feds trace bullets |
| aleksei_gamez14 | rickbrosss | Hmm you got one with a extendo clip to |
| rickbrosss | aleksei_gamez14 | If you do kill anyone just toss the barrel and firing pin |
| rickbrosss | aleksei_gamez14 | Me too |
| aleksei_gamez14 | rickbrosss | I like that |

Incredibly concerning, Dittmer III instructed a potential purchaser "if you do kill anyone

just toss the barrel and firing pin." The conversation continued:

| | | |
|---|---|---|
| aleksei_gamez14 | rickbrosss | I like that |
| rickbrosss | aleksei_gamez14 | Gloves on they untraceable |
| rickbrosss | aleksei_gamez14 | These arent stolen guns these are hand built with no serial numbers |
| rickbrosss | aleksei_gamez14 | I dont do cheap guns g |
| alexgamez.13 | rickbrosss | Bhett |
| rickbrosss | alexgamez.13 | Its small so itl fit in the palm of your hand but still takes the big mags and drums |
| rickbrosss | alexgamez.13 | That one in the vid is a baby glock with the dick |

. . .

| aleksei_gamez14 | rickbrosss | I like glocks those are tight foo |
| aleksei_gamez14 | rickbrosss | Alr |
| rickbrosss | aleksei_gamez14 | Yea hol up |
| rickbrosss | aleksei_gamez14 | Ar15 i can make in 5.56%2C 7.62. Or i can do ar10 which is 308 |
| aleksei_gamez14 | rickbrosss | You got more pics or vids? |
| rickbrosss | aleksei_gamez14 | Handguns come in 9mm%2C .40 or 357 sig |
| aleksei_gamez14 | rickbrosss | Alr bet |
| rickbrosss | aleksei_gamez14 | Not the move for feds |
| rickbrosss | aleksei_gamez14 | They got numbers too |
| rickbrosss | aleksei_gamez14 | Yea i seent that |
| aleksei_gamez14 | rickbrosss | I got some straps but they got bodyâ€™s so i need one to carry around without body |
| rickbrosss | aleksei_gamez14 | Ar 15s are 800 |
| rickbrosss | aleksei_gamez14 | Custom glock 1000 |
| rickbrosss | aleksei_gamez14 | No serial numbers |
| aleksei_gamez14 | rickbrosss | How much is that one |
| rickbrosss | aleksei_gamez14 | No serial numbers |
| aleksei_gamez14 | rickbrosss | How much is that one |
| rickbrosss | aleksei_gamez14 | |
| rickbrosss | aleksei_gamez14 | Product |
| aleksei_gamez14 | rickbrosss | Ayy what up g |
| alexgamez.13 | rickbrosss | Okay fs |
| rickbrosss | alexgamez.13 | Handguns are 1000 |
| rickbrosss | alexgamez.13 | Ar15 800 |
| alexgamez.13 | rickbrosss | @aleksei_gamez14 |

On April 10, 2019, Dittmer III was charged in a superseding criminal indictment with the additional offenses of *Attempt Sexual Exploitation of a Child*, *Receipt of Child Pornography*, and *Distribution of Child Pornography*.[11] On January 11, 2021, Dittmer III pled guilty to a two-count superseding information charging him with *Receipt of Child Pornography* from the 2016 investigation and *Attempt Sexual Exploitation of a Child* from the 2019 investigation.[12] Sentencing is currently set for September 21, 2021.[13]

The government also recently learned of an additional sex crime Dittmer III committed after the second search warrant was executed on his residence but prior to the initial indictment.[14] In the two attached letters, two of Dittmer III's family members described an additional instance in the winter of 2016 in which Dittmer III committed sexual offenses against a relative. *Id.* While Dittmer III's seven-year-old relative was

---

[11] ECF No. 35.

[12] ECF No. 81, 82, 84, and 85.

[13] ECF No. 119.

[14] The two letters from Dittmer III's family members were provided to the Court and defense counsel. The government did not receive these two letters until after co-defendant/father Dittmer II's sentencing hearing.

playing a game with virtual reality glasses on over her eyes, Dittmer III pulled out his penis and forced her hand to touch it. *Id.*[15]

Dittmer III has been held in custody since April 11, 2019, on the superseding indictment.[16] Even while in custody, Dittmer III has violated multiple rules and restrictions of the detention center.[17] Dittmer III has also refused to follow orders of correctional officers on multiple occasions, forged paperwork, and possessed contraband.[18] Of most concern, in September of 2019, Dittmer III was found to have two homemade shanks in his cell.[19] In addition to the shanks, Dittmer III possessed marijuana.[20] In March of 2020, Dittmer III was again found in possession of a makeshift weapon, this time a pair of nail clippers that had been sharpened to a point.[21]

### III.    Points and Authorities

#### A.  The Applicable Sentencing Guidelines

The parties jointly agreed and stipulated that the Court should use the base offense level and adjustments as identified in the plea agreement.[22] The United States Probation Office calculated the advisory sentencing guidelines consistent with the parties' agreement as set forth in the plea agreement.[23] The parties also stipulated to a two-level reduction pursuant to 18 U.S.C. § 3553(a).[24] The probation department did not apply this reduction.[25]

---

[15] The incident was reported to police, but Dittmer III was not charged with any offenses arising out of this incident.
[16] ECF No. 52.
[17] PSR at ¶¶ 110-19
[18] *Id.* at ¶111, 114, 115, and 116-19.
[19] *Id.* at ¶ 111.
[20] *Id.*
[21] *Id.* at ¶ 113.
[22] ECF No. 84 at 16-17.
[23] PSR at ¶¶ 49-75.
[24] ECF No. 84 at 17.
[25] PSR at ¶ 158.

Per the plea agreement, the total adjusted offense level is 41.[26] The government agrees with the calculated criminal history category of I.[27] Therefore, the advisory guideline range based on the plea agreement and Dittmer III's criminal history score is 324 to 405 months imprisonment, and five years to a lifetime term of supervised release.[28]

**B.  Term of Imprisonment**

The goal of sentencing is to "'impose a sentence sufficient but not greater than necessary' to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; to afford adequate deterrence; to protect the public; and to provide the defendant with needed . . . correctional treatment."[29] The Court considers "the nature and circumstances of the offense and the history and characteristics of the defendant," "the need for the sentence imposed," "the kinds of sentences available," the applicable sentencing guideline range, any pertinent policy statement, sentences imposed on other similarly situated defendants, and the need for victim restitution.[30] Considering the relevant factors, the Court should impose a 324-month sentence.

Dittmer III found a 13-year-old on Snapchat, sent her money unsolicited, then blackmailed the child into producing child sexual abuse material. Dittmer III then attempted to extort Victim 1 into producing even more sexually explicit images and videos by threatening to send the pornographic images of the minor victim all over her middle school. He even took screenshots of Victim 1's location and sent them to her, instilling even more fear into the victim by letting her know that he knew where she lived.

---

[26] *Id.* at 159, ECF No. 84 at 17.
[27] PSR at ¶¶ 88-89.
[28] *Id.* at ¶ 159-160.
[29] *United States v. Carry*, 520 F.3d 984, 991 (9th Cir. 2008) (quoting 18 U.S.C. § 3553(a)).
[30] 18 U.S.C. § 3553(a).

Victim 1 has expressed the fear Dittmer III caused her, the humiliation she felt, and the long-lasting effects Dittmer III's actions have had on her. In preparation for sentencing, Victim 1 wrote an impact statement for the Court's consideration.[31] In part, Victim 1 stated,

> This sick man took away my innocence and dignity. I was humiliated and even worse when we had to go to the police about it. I never wanted to show my face again. I had to force myself to go to school and act like I wasn't hurting. He made me hate myself. I was depressed, anxious, and [had] trust issues, to the point where I couldn't leave my house during the summer. He affected me so bad my family started hurting. I became so unmentally (sic) stable that my family had to go get me help. I lived at a therapeutic facility [] for 9 months, away from reality. There I learned to cope with my trauma that sick man caused me, and learned to love myself. 9 months of me hurting and my family hurting. I lost all my friends because of being sent away, having contact with nobody but my family. I blame it all on that sick man, because no 13-year-old should have to go through what I did. It only made me stronger. I never want to see this sick man walking in public. He doesn't deserve that right. Not after what he put me through. No help will ever help you out. You're sick. You should never come out of jail or ever walk the streets again. You don't earn that right. You make me sick to my stomach. I truly hate you and how you've impacted my life.

Dittmer III will not serve a life sentence, but Victim 1 will live her entire life with the effects Dittmer III's conduct caused her. Victim 1 was particularly victimized by Dittmer III's actions as he manipulated her into creating child sexual abuse material for his own pedophilic desires and then extorted her to make even more sexually explicit videos. Dittmer III's actions toward Victim 1 alone justify a sentence of 324 months.

What's more, Dittmer III did all of this while already facing very serious child pornography charges and during a time he was being supervised. Not only did Dittmer III manipulate and extort Victim 1 to produce images and videos constituting child

---

[31] PSR at ¶ 44; The victim impact statement was previously provided to the Court and defense counsel.

pornography, but he also possessed, received, and distributed numerous files of child pornography of other children. Dittmer III's collection of 4,063 images and 1,176 videos child pornography is equivalent to 92,263 images of child pornography.[32] Notably, Dittmer III's collection was deleted in 2014 and he had to re-start his search for and compilation of child sexual abuse images, which was again seized in 2016. But that did not stop Dittmer III. Far from acknowledging the severity of his offenses and trying to address them, Dittmer III instead chose to escalate his behavior. Dittmer III forced a seven-year-old relative to touch his naked penis after the two search warrants were executed on his residence. Then, while under community supervision, Dittmer III simultaneously rebuilt his child pornography library for the third time in five years and committed additional sexual exploitation crimes against multiple children on Snapchat, particularly the crimes against Victim 1.

Dittmer III viewed and collected images and videos that depicted the violent and morally repugnant sexual assaults of children. Child pornography offenses are not victimless crimes.[33] Every time a pedophile views an image of child pornography, he causes harm.[34] All of the children depicted in Dittmer III's collection were victimized by his actions. Dittmer III not only created that perpetual agony for Victim 1, but he also participated in causing harm to each child contained in every single child pornography file he possessed. In this way, child pornography is the worst type of exploitation because it is never-ending. Victims have to live knowing that their abuse is being shared online to satisfy the sexual desires of deviants who seek it out and make it available to others.

---

[32] PSR at ¶55.
[33] *United States v. Boos*, 127 F.3d 1207, 1211 (9th Cir. 1997).
[34] *United States v. Blinkinsop*, 606 F.3d 1110, 1117 (9th Cir. 2010).

14

In 2012, the Sentencing Commission submitted its most recent evaluation of the child pornography guidelines in its Report to the Congress: Federal Child Pornography Offenses.[35] The 2012 Report opens stating: "All child pornography offenses, including the simple possession of child pornography, are extremely serious because they both result in perpetual harm to victims and validate and normalize the sexual exploitation of children."[36]

The 2012 Report further describes how the Internet has perpetuated and heightened the harm to victims by causing them to "live with persistent concern over who has seen images of their sexual abuse and suffer by knowing that their images are being used by offenders for sexual gratification and potentially for 'grooming' new victims of child sexual abuse." Internet possession is a lifelong harm. Moreover, online communities validate and escalate the abuse of children and normalize this horrific violence.[37]

At the beginning of its report, the Sentencing Commission emphasized the terrible impact of child pornography. It described what those in the criminal justice system have long known: child pornography has a highly destructive, life-long impact on victims. It devastates children and undermines all of society because the effects of this abuse extend to those who are close to the victim, including parents, partners, spouses, friends, and siblings,

---

[35] *Available at* http://www.ussc.gov/news/congressional-testimony-and-reports/sex-offense-topics/report-congress-federal-child-pornography-offenses (the "2012 Report").

[36] *Id.* at vi.

[37] *Id.* at vi-vii. One online community discussing the most commonly traded child pornography series included this statement: "The [series name] vids are the absolute best cp I've ever found. The little cocksucker was so fucking hot. There's one vid in particular where her [abuser] is fucking her ass while she rubs her clit, and she has the most satisfied look on her face as she cums. I used the vids as 'training' films when I started fucking my own daughter, and they really helped her get into it." This victim has been stalked on multiple occasions by "fans" of her exploitation, and has been harassed by others to make adult pornography as an ode to her childhood sexual exploitation at the hands of her abuser. Dittmer III and others like him are the cause of this victim's ongoing trauma.

and because it destroys the fabric of a community when rape, violence, and exploitation of children are normalized and traded, collected, and used for sexual gratification.

Dittmer III's actions warrant a sentence of 324 months. The sentence is substantively reasonable and warranted. Dittmer III's actions against Victim 1 are repugnant. His collection of child pornography files is voluminous. His hands on-offense against his seven-year-old relative is repulsive. And what is incredibly concerning is Dittmer III's escalation of conduct despite being under investigation for multiple sex crimes. Not only did Dittmer III's conduct escalate while he was under investigation for child pornography offenses, but he also committed the offense against Victim 1 *while on pretrial release*. Additionally, Dittmer III has a penchant for manufacturing homemade weapons and violence. Dittmer III indicated he made his own firearms, attempted to sell those firearms online, and informed the purchaser as to how to avoid detection if the person kills someone with the weapons he made. Moreover, Dittmer III has failed to abide by rules and regulations while in custody – he has been caught with drugs, contraband, and homemade shanks. Dittmer III clearly has no respect for the law and refuses to abide by the Court's implementation of restrictions as well as the detention center's rules to protect others from Dittmer III.

Any modicum of mercy this Court believes is appropriate is already built into the structured negotiation. Dittmer III has pleaded guilty to a two-count superseding information rather than the five counts as charged in the superseding indictment. Additionally, the government's agreement to not seek a sentence higher than 324 months is 276 months lower than the guidelines as calculated in the PSR.[38] In considering the full

---

[38] PSR at ¶ 155.

extent of Dittmer III's conduct, a sentence of 324 months is reasonable and no further downward variance is warranted. Indeed, any further variance would defy the goals of sentencing set forth in § 3553. The government's requested sentence in this case reflects careful consideration of the facts, the responsibility taken by Dittmer III, and every possible benefit of § 3553 given to him. The 324-month sentence is the bare minimum in order to reflect the seriousness of the offenses, promote respect for the law, and provide just punishment. Additionally, this sentence serves as a strong deterrent to Dittmer III and other pedophiles and child molesters like him.

In many ways, this Court's task is simple—it must protect the public.[39] The probation department correctly identified the risk that Dittmer III poses: "[t]he psychological terror Dittmer III inflicted upon this young girl [is] nothing short of diabolical. The defendant is viewed to be a predator, and the community must be protected from him."[40] Unfortunately, Dittmer III has shown this Court that the only way to protect the public is to incarcerate him for a significant period of time. These considerations demonstrate that a 324-month sentence is reasonable. A lengthy sentence is the only thing that will protect the public from Dittmer III's sexually deviant behavior toward children and penchant of weapons and violence. This sentence is sufficient, but not greater than necessary, to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence, and most importantly, to protect the public.

///

///

---

[39] 18 U.S.C. § 3553(a)(2)(C).
[40] PSR at ¶184.

**C. Supervised Release**

The same facts that demonstrate the necessity for a sentence of 324 months also show Dittmer III should be placed on a lifetime term of supervised release. Dittmer III's myriad sex offenses against children should give the Court significant pause. Dittmer III's likelihood to re-offend will likely be reduced and his rehabilitation will be improved if he remains on supervision for the longest period of time possible. In any event, this long term of supervision will give the community and children in general solace that Dittmer III is under the watchful eye of the Court. Aside from sex offender rehabilitation, which is undoubtedly warranted in this case considering Dittmer III's admitted deviant sexual behavior, and his demonstrated unwillingness to curb that behavior while on community supervision, he would also benefit from the recommended special conditions. Lifetime supervision is essential in trying to keep the community safe from Dittmer III's future crimes and providing offender management services. Lifetime supervision serves the purpose of helping Dittmer III stay accountable and continue to receive treatment after his release from custody and keep the community safe.

As specified in the plea agreement, Dittmer III agreed to the imposition of special conditions of supervised release.[41] The government requests that the special conditions as agreed upon be imposed during Dittmer III's time of supervised release. Conditions of supervised release may only be imposed if they are reasonably related to the goals of deterrence, protection of the public, or rehabilitation of the offender.[42] However, conditions of supervised release need not relate to the defendant's underlying convicted offense, so

---

[41] *See* ECF No. 84 at 3-6.
[42] 18 U.S.C. §§ 3583(d)(1), 3553(a).

18

long as they relate to at least one of these goals.[43] The Ninth Circuit has consistently held that as long as the district court makes a factual finding which establishes a nexus between the condition and one of the goals articulated in 18 U.S.C. § 3553(a)(2)(B)-(D), the district court is not abusing its discretion to impose such a condition.[44] Each of the conditions listed in the PSR are related to Dittmer III's deterrence, protection of the public, or Dittmer III's rehabilitation. As such, we ask that the special conditions be imposed as agreed upon.

**D. JVTA and Restitution**

The Justice for Victims of Trafficking Act requires imposition of $5,000 special assessment per count of conviction, for a total of $10,000, and Dittmer III agrees.[45]

Dittmer III agreed to pay restitution in the amount of $7,000 per victim of his child pornography collection who requested restitution prior to sentencing.[46] Two victims have requested restitution.[47] The government requests this Court order Dittmer III to pay each victim $7,000 in restitution as agreed upon in the plea agreement.

Dittmer III also agreed to pay full restitution to Victim 1 for his conduct.[48] At this time, Victim 1 has provided restitution documentation for $29,799.99.[49]

---

[43] *United States v. Wise*, 391 F.3d 1027, 1031 (9th Cir. 2004).
[44] *United States v. Terrigno*, 838 F.2d 371, 374 (9th Cir. 1988), *see also United States v. Hinkson*, 585 F.3d 1247, 1264 (9th Cir. 2009).
[45] *See* ECF No. 84 at 10.
[46] *See* ECF No. 84 at 6.
[47] The restitution request packet was provided to the Court, U.S. Probation Office, and Dittmer III on August 13, 2021.
[48] *See* ECF No. 84 at 10.
[49] The government is waiting for further documentation from Victim 1 for any additional restitution. The documentation currently provided only covers August of 2020 through December of 2020. Once more information becomes available, the government will provide it to the Court and defense counsel.

### IV.    Conclusion

Dittmer III has demonstrated himself to be nothing short of a sexual predator. When his internet child pornography offenses were discovered, his crimes not only continued, but drastically escalated to hands-on sexual abuse of multiple victims. This Court should give proper weight to the significance of Dittmer III's conduct and the facts of this case. Doing so will lead to the conclusion that a 324-month sentence is not only appropriate, but also fundamentally sufficient but not greater than necessary to meet the goals of sentencing. Dittmer III has damaged the childhood of Victim 1 through his manipulation and extortion and continues to deprive victims of child pornography of their chance to move past their exploitation. And he does this for no other reason than his own pedophilic pleasure. Society must be protected from him for as long as legally possible.

The government requests that this Court sentence Dittmer III to 324-months in custody with lifetime supervision to follow. Based on the totality of circumstances, the requested 324 months followed by lifetime supervised release is sufficient but not greater than necessary to comply with the §3553 factors.

Dated this the 14th day of September, 2021.

Respectfully Submitted,

CHRISTOPHER CHIOU
Acting United States Attorney

*/s/ Bianca R. Pucci*
BIANCA R. PUCCI
Assistant United States Attorney